1  Stenson vigorously, but that he and Stenson disagreed on the theory of defense regarding alternative
2  suspect evidence implicating Denise Hoerner. When Stenson requested substitute counsel, the court
3  held a hearing and found that the dispute was over strategy, which did not warrant granting Stenson's
4  request. The Supreme Court dismissed Stenson's claim that Leatherman was antagonistic to his
5  motion to substitute counsel because "Stenson was continuously represented by one cocounsel not in
6  an adversarial position to him [Neupert], and both counsel aided Stenson in preparing his motion for
7  substitution." Id.

8  Stenson disputes the Supreme Court's conclusion that he was represented by cocounsel
9  Neupert during the hearing on his motion because "Neupert fully concurred in Leatherman's position."
10  (Pet. at 43). Stenson points out that Leatherman stated during the hearing that Neupert shared his
11  opinion of the evidence and that Neupert did not advocate for Stenson to obtain new counsel.
12  Stenson likewise disputes the Supreme Court's conclusion that both counsel aided him in preparing his
13  motion for substitution because the record is clear that they were not acting as counsel when they did
14  so. (Id.) To support further his position that Leatherman was antagonistic to his motion, he contends
15  that Leatherman told the judge during the ex parte hearing that Stenson was guilty, was a liar, and was
16  brain-damaged, and that Leatherman revealed confidential information to oppose the motion (e.g. the
17  defense blood spatter expert's analysis and the results of Stenson's neuropsychological examination).
18  He argues that Leatherman's antagonism was much more extreme than in either Wadsworth or
19  Adelzo-Gonzalez, both of which required appointment of counsel for the hearing on a request for new
20  counsel. In short, he disagrees with the Washington Supreme Court that Wadsworth is
21  distinguishable.

22  Habeas relief is not warranted on this claim because the Washington Supreme Court's holding
23  that Wadsworth is distinguishable was not objectively unreasonable. Notably, both Wadsworth and
24  Adelzo-Gonzalez were direct appeals of federal court convictions, not habeas petitions of state court
25  convictions (plus, Wadsworth was pre-AEDPA and Adelzo-Gonzalez was handed down after the

ORDER - 22

Washington Supreme Court ruled in Stenson I).  Reasonable jurists could conclude that the facts here are not as egregious as Wadsworth.  In Wadsworth, the fact that the attorney had stopped working to prepare for trial was indicative of the attorney's failure to act in the best interests of his client and the attorney's antagonistic stance towards the defendant's right to counsel.  Here, as the Washington Supreme Court noted, the trial judge found that Leatherman was diligently representing Stenson's interests, notwithstanding their differences of opinion as to strategy and theory of defense.

At oral argument on Stenson's habeas petition, his counsel suggested that Stenson lacked diligent representation because of Leatherman's personal beliefs and attitudes towards Stenson, this case, and the death penalty.  Diligent representation can only be measured by objective indications of counsel's performance.  The Court can look only at what counsel does and cannot delve into counsel's personal attitudes or personal feelings.  Counsel's personal beliefs or feelings has no place in this analysis; they are no measure of effective assistance.

V.  Claim H: Violation of Right to Effective Assistance of Counsel at Trial

Stenson alleges that he received ineffective assistance of counsel because his counsel: 1) failed to present alternate suspect evidence implicating Denise Hoerner, 2) failed to present exculpatory evidence of the condition of Stenson's hands at the time of the murders, which Stenson maintains could have rebutted the state's inculpatory evidence concerning the condition of his hands, 3) was not prepared for testimony by Dr. Brady, the physician who performed the autopsy, that the shape of the wounds on Frank Hoerner's head conformed to Stenson's missing nunchukas weapons, and 4) failed to investigate and present evidence of the location of the missing nunchukas.

To succeed on an ineffective assistance of counsel claim, a petitioner must show 1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that his counsel's deficient performance so prejudiced the petitioner that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 694 (1984).  The objective standard of reasonableness is gauged at the

ORDER - 23