1

2

3

4

5

6

7

8

9

10                 UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
11                          AT SEATTLE

12   DAROLD J. STENSON,

13                     Petitioner,

14          v.                                    No. C01-252P

15   JOHN LAMBERT,                                ORDER DENYING PETITIONER'S
                                                  MOTION FOR RECONSIDERATION
16                     Respondent.

17

18

19          This matter comes before the Court on Petitioner Darold J. Stenson's ("Stenson") Motion

20   Reconsideration of the Court's ruling on two of his habeas claims. (Dkt. No. 164). First, Stenson

21   challenges the Court's ruling that there was no constitutional violation in barring execution impact

22   testimony at sentencing as a mitigating factor (claim G). Second, he challenges the Court's ruling that

23   there was no violation of his right to effective assistance at sentencing (claim F). The Court called for

24   a response from the State on Stenson's effective assistance at sentencing argument. Having reviewed

25   Stenson's motion, the State's response, and Stenson's reply, as well as the state court record, the

ORDER - 1

1    Court DENIES Stenson's motion.  Stenson has not shown that the Court erred in its ruling on either

2    claim.

3                                          ANALYSIS

4            Motions for reconsideration in this district are disfavored.  Western District of Washington

5    Local Rules CR 7(h).  Reconsideration is warranted if the moving party shows either manifest error in

6    the Court's ruling or new facts or legal authority that could not have been brought to the Court's

7    attention earlier.

8    I.  Claim G:  Violation of Right to Present Mitigating Evidence at Sentencing

9            Stenson makes a three part argument in challenging the Court's ruling on this claim.  First

10   Stenson argues that, contrary to the Court's conclusion, his counsel did offer evidence of the bond

11   between himself and his children and his father.  Second, he argues that the Court erred in failing to

12   apply Lockett v. Ohio, 438 U.S. 586 (1978), to this new factual situation.  Third, he argues that the

13   Court erred in rejecting this claim merely because it was presented in different terms (using different

14   language) than was presented in his state court proceedings.

15           Stenson has not presented new facts or new legal authority to support his arguments.

16   Nonetheless, in an abundance of caution, the Court addresses Stenson's arguments to clarify its order

17   denying his habeas petition.  First, this Court did not conclude that Leatherman or Neupert did not

18   offer evidence of the bond between Stenson and his children and father.  The record is clear that

19   counsel offered such evidence.  The Court's point was that the judge did not exclude such evidence.

20           Second, while it may be true that the Supreme Court has applied Lockett to a variety of factual

21   situations, in all of those situations the mitigating evidence reflected directly upon the defendant's

22   character.  See Tennard v. Dretke, 542 U.S. 274 (2004); Williams v. Taylor, 529 U.S. 362 (2000);

23   Penry v. Lynaugh, 492 U.S. 302 (1989); Skipper v. South Carolina, 476 U.S. 1 (1986); Eddings v.

24   Oklahoma, 455 U.S. 104 (1982).  Thus, Lockett and its progeny stands for the general principle that

25   mitigating evidence can include offense specific evidence as well as non-offense evidence concerning

ORDER - 2

1   the defendant's character.  As discussed in detail below, Stenson's counsel claimed during the trial that

2   this testimony was relevant to show the impact of Stenson's execution on Stenson's family.  Such

3   testimony is outside of the scope of <u>Lockett</u> and its progeny because it was not presented as relevant

4   to the defendant's character.

5          Third, to the extent that Stenson now argues (despite not having done so in his state personal

6   restraint petition proceedings) that such evidence is relevant because it ultimately reflects on Stenson's

7   character, that argument also fails.  When his counsel was arguing for the admissibility of such

8   evidence, neither Leatherman nor Neupert ever characterized it as reflective of Stenson's character.

9   They specifically and repeatedly referred to this testimony as showing the effect of Stenson's

10  execution on his family and friends and that this effect would merit not imposing the death penalty.

11  (REC 7074-78; 7137-41; 7168-73; 7281-91; 7313-14; 7417).  In fact, Leatherman cited <u>Lockett</u> for

12  the principle that mitigating evidence should not be limited to evidence about the defendant, his

13  record, and his character, but rather that it should extend to evidence of the impact of defendant's

14  execution on the defendant's family.  (REC 7288).  Stenson has not pointed to any statement by his

15  counsel in the record in which either counsel claimed that this evidence would reflect on Stenson's

16  character.  The trial judge at one point opined that such evidence might indirectly bear on Stenson's

17  character, but made clear that direct questions about the impact of Stenson's execution on his family

18  was not the proper approach because these questions were not directly relevant to Stenson's

19  character.  Rather, the proper approach was to ask questions about Stenson's relationship with his

20  children.  The judge stated:

21           [I]t seems that the fact that Mr. Stenson has children who will be left without a natural
             parent if he is executed is certainly a factor about Mr. Stenson that is relevant.  The fact
22           that he has a caring extended family is, in fact, relevant.  It seems to me that the
             question of what the impact will be on the individual family members without more is
23           not really relevant as a fact about Mr. Stenson.  Obviously the inference that he has a
             caring family is the same but the question seems to cross beyond the specific relevance
24           even under a broad interpretation of relevance and, if objected to, seems to me it
             doesn't come in. . . . [T]he line is very subtle.  I think it is crossed if the question is
25           asked point blank.  It is not crossed if the question is asked inferentially where the facts

are made known about Mr. Stenson and his family and his children.  And at that point in time you [Stenson's counsel] are free to argue, I would think, that if Mr. Stenson can serve, if he's a live a person [sic] in connection with those relationships, testimony that bluntly: will you be devastated, will this person be devastated, if that relationship is terminated by the death penalty, strike me as too direct.

(REC 7291-93).[1]  Later the judge clarified that questions as to the fact that the children might maintain a relationship with Stenson would be proper.  (REC 7419).  The judge never excluded any testimony of Stenson's relationship with his children or his father.  Given the many direct ways to use the defendant's relationship with his family to show the defendant's character which the judge discussed in detail and allowed in, it was not unreasonable to exclude execution impact testimony as not within the scope of mitigating evidence.

## II.  Claim F: Violation of Right to Effective Assistance of Counsel at Sentencing

Stenson argues that the Court erred in ruling that Leatherman's concession of guilt during the penalty phase was not ineffective assistance of counsel.  Stenson cites a new Ninth Circuit case United States v. Thomas, __ F.3d __, 2005 WL 1813310 (9th Cir. Aug. 3, 2005), for the proposition that a concession of guilt without consulting the defendant is per se deficient performance.  The only remaining issue, according to Stenson, is whether he suffered prejudice as a result of Leatherman's concession of guilt.  He maintains that he did because Leatherman's concession of guilt undermined any residual doubt as a mitigating circumstance, which he argues is a legitimate and effective mitigating factor.  Stenson maintains that residual doubt was a potentially significant mitigation factor in his case given the circumstantial nature of the case, his position in the guilt phase that he was innocent, his lack of prior violent crimes, and Dr. Lezak's testimony that Stenson lacked the ability to plan combined with the prosecution's theory that Stenson had carefully planned the murders.

---

[1]  Stenson makes much of the fact that the judge stated that such testimony would be too emotional, which Stenson interprets as bolstering the relevancy of such testimony.  However, when the judge opined that this testimony would improperly appeal to the emotions of the jury, he was clearly referring to testimony of the impact on Stenson's family of Stenson's execution; he was not referring to this testimony as a reflection of Stenson's character.  (REC 7250).

1        Florida v. Nixon, 125 S. Ct. 551 (2004), made clear that certain decisions require the

2   defendant's consent, namely whether to plead guilty, to testify at trial, to waive a jury trial, or take an

3   appeal.  Id. at 560.  Failure to obtain the defendant's consent on any of these issues would be per se

4   deficient performance by counsel.  In Nixon the Court held that counsel's performance in conceding

5   guilt in the guilt phase was not the functional equivalent of pleading guilty because counsel did not

6   relieve the state of its obligation to present competent and admissible evidence during the trial.  Id. at

7   561.  Consequently, counsel's performance was not per se deficient.  Here, Leatherman's concession

8   of guilt in the penalty phase can hardly be said to be the functional equivalent of a guilty plea since it

9   was made in the penalty phase after the jury had already found Stenson guilty.  As such, there is no

10  basis to conclude that Leatherman's conduct during the penalty phase was per se deficient.

11       Stenson's reliance on Thomas to argue that Letherman's performance was deficient per se is

12  not persuasive.  In Thomas, which was a non-capital case, the defendant's attorney conceded guilt on

13  one count where the evidence was overwhelming in an effort to obtain an acquittal on the other counts

14  where the evidence was not as overwhelming.  At the beginning of the opinion, the court cited Nixon

15  and stated "[i]n this case, we assume that counsel's concession of guilt without consultation or

16  consent is deficient."  2005 WL 1813310 at *2.  The court noted in a footnote to this sentence that

17  Strickland allows a court to examine whether the defendant suffered prejudice without determining

18  whether counsel's performance was deficient and that if it is easier to dispose of an ineffectiveness

19  claim by this means, the court should do so.  Id. at *2 n.1.  The legal issue the Ninth Circuit addressed

20  in Thomas was whether prejudice could be presumed or whether the defendant had to and did prove

21  prejudice.  The court held that the defendant had to prove prejudice and that he had not done so given

22  the overwhelming evidence against him.  Id. at *3.  The court concluded that the attorney's strategic

23  decision to concede guilt was reasonable given the totality of the evidence against the defendant.  Id.

24  at *4.  In her concurrence, Judge Fletcher commented:

25

> it is entirely inappropriate for an attorney to make such a concession without prior discussion with the client.  Consultation is vital not only to inform the client about his lawyer's proposed course of action, but also (more importantly) to provide the defendant with an opportunity to object to any contemplated concessions.

Id. at *5.  To the extent that Thomas could be interpreted as deeming the failure to obtain consent before conceding guilt per se deficient performance, this is dicta not the court's holding.  Furthermore, the concession in Thomas occurred during the guilt phase, not the penalty phase.

Neither Nixon nor Thomas addressed the issue of whether a counsel's decision to concede guilt during the penalty phase as a strategy to avoid a sentence of death after the jury has already found the defendant guilty in the guilt phase is a deficient performance.  Conceding guilt in the guilt phase is markedly different from conceding guilt in the penalty phase of a capital case after the jury has just found the defendant guilty.  The reality that the defendant's counsel faces in the sentencing phase of a capital case once the jury has found the defendant guilty changes the landscape of what constitutes reasonable or deficient performance.  As the Supreme Court recognized in Nixon, "[a]ttorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear."  Nixon, 125 S. Ct. at 562.  Just as it is reasonable for an attorney to conclude that it would be counterproductive to engage in "a useless charade" of insisting on the defendant's innocence during the guilt phase when counsel determines that the evidence of his client's guilt is overwhelming, id. at 563, it is reasonable for an attorney to conclude that it would be counterproductive to engage in "a useless charade" by insisting on the defendant's innocence at the sentencing phase after the jury has just found him guilty.  In sum, counsel's strategic decision to concede guilt in the penalty phase of a capital case can be reasonable in light of the circumstances as a whole, which it was in this case.  Stenson has not shown that the

//

//

//

1   Court's analysis and conclusion on this claim was manifestly erroneous under <u>Thomas</u> or <u>Nixon</u>.

2        The clerk is directed to provide copies of this order to all counsel of record.

3        Dated: September 6, 2005

4

5

6                                  *Marsha J. Pechman*

7                                  Marsha J. Pechman
                                  United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 7